IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SANDRA MOYER, *et al.*,<br><br>*Plaintiffs*<br><br>v.<br><br>**MR. COOPER GROUP, INC. f/k/a HOME POINT FINANCIAL CORP. f/k/a MAVERICK FUNDING CORP.**,<br><br>*Defendant*. | Civil Action No.: 1:20-cv-03449-RDB |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT OF ALL CLAIMS ASSERTED AGAINST MR. COOPER GROUP, INC. f/k/a HOME POINT FINANCIAL CORP. f/k/a MAVERICK FUNDING CORP.**

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Sandra Moyer, Richard Martin, Terry Patterson, Jr., and Yvonne Matthew ("Plaintiffs" or "Class Representatives"), by and through their attorneys, Smith, Gildea & Schmidt, LLC and Joseph, Greenwald & Laake, P.A., and Defendant Mr. Cooper Group, Inc. as successor to Home Point Financial Corporation formerly known as Maverick Funding Corporation (collectively, "Home Point"), by and through its attorneys, Sheppard, Mullin, Richter & Hampton LLP submit this Memorandum of Law in support of their Joint Motion for Preliminary Approval of Class Action Settlement of All Claims Asserted Against Home Point.

I.     **INTRODUCTION**

This is a class action case where Plaintiffs allege that Home Point and its brokers, employees, and/or agents participated in a purportedly unlawful kickback scheme with All Star Title, Inc. ("All Star"). Specifically, Plaintiffs allege that All Star paid, and certain Home Point brokers, employees and/or agents accepted and received, kickbacks in exchange for the assignment

1

and referral of residential mortgage loans, refinances, and reverse mortgages to All Star for title and settlement services. Plaintiffs allege that from roughly January 1, 2014 through at least February 29, 2016, certain Home Point brokers, employees and/or agents in fact assigned and referred loans under the kickback agreement, including Plaintiffs' loans, and All Star paid kickbacks to Home Point for those loans in violation of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2601, *et. seq.* Home Point denies all substantive allegations of the Complaint and denies all allegations of liability or wrongdoing.

On October 11, 2023, this Court granted Plaintiffs' Motion for Class Certification and certified the class as:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated by, brokered by, and/or otherwise obtained from Home Point Financial Corporation f/k/a Maverick Funding Corporation, for which All State [sic] Title, Inc., provided settlement service, as identified on the borrowers HUD-1 or Closing Disclosure, between January 1, 2014 and February 29, 2016. Exempted from this class is any person who, during the period between January 1, 2014 and February 29, 2016 was an employee, officer, member, and/or agent of Home Point Financial, Maverick Funding Corporation, or All Star Title, Inc.

ECF No. 74 (hereinafter the "Home Point Class"). The Court appointed Plaintiffs Sandra Moyer, Richard Martin, Terry Patterson, Jr., and Yvonne Matthew as Class Representatives and Melissa Lynn English and Michael Paul Smith, of Smith, Gildea & Schmidt, LCC, and Drew LaFramboise and Timothy Francis Maloney, of Joseph Greenwald & Laake, P.A., as Class Counsel. *Id*.

Recognizing the uncertainties of litigation, in January 2024, Plaintiffs and Home Point began discussing the possibility of resolving Plaintiffs' and the Home Point Class's disputed claims against Home Point. After a thorough investigation regarding the claims asserted against Home Point, including Plaintiffs' discovery of thousands of records regarding Home Point and All

Star and through Plaintiffs' review of information related to Home Point residential mortgage loans, refinances, and reverse mortgages closed by All Star between January 1, 2014, and February 28, 2016, certification of the Home Point Class on October 12, 2023, and resolution of Defendant's appeal of that order to the Fourth Circuit, the parties reached a proposed settlement with respect to all claims involving Home Point in this action (the "Settlement") that is reflected in the proposed Settlement Agreement.[1] *See* Ex. 1, Settlement Agreement.

Plaintiffs and Defendant believe that the Settlement complies with Fed. R. Civ. P. 23(e) and is a fair, reasonable, and adequate resolution to the disputed claims against Home Point. As such, the Parties respectfully request that this Court enter an order: (1) preliminarily approving the Settlement, (2) approving the proposed Notices and Notice Plan; and (3) establishing deadlines for Objections, Requests for Exclusions, and a Final Fairness Hearing.

## II.   LEGAL STANDARD FOR APPROVAL OF THE SETTLEMENT

Federal Rule of Civil Procedure 23 provides that "a class action shall not be dismissed without the approval of the court." The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citing *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)); *In re Fin. Mgmt., Inc. Sec. Litig.*, 718 F. Supp. 1012 (D. Mass. 1988).

At this stage, the Court need only preliminarily determine that the Settlement is within "the range of possible approval." *In Re Mid-Atlantic Toyota Antitrust Litig.,* 564 F. Supp. 1379 (D. Md. 1983) (citing *Manual on Complex Litigation* § 1.46 at 62, 64-65). The process for approving class

---

[1] The capitalized terms herein have the meanings defined in the Settlement Agreement.

action settlements was outlined in *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825 (E.D.N.C. 1994), as follows:

> [T]he courts generally have followed a two-step procedure. First, the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval" or, in other words, whether there is "probable cause" to notify the class of the proposed settlement. Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a "fairness" hearing, at which all interested parties are afforded an opportunity to be heard on the proposed settlement. The ultimate purpose of the fairness hearing is to determine if the proposed settlement is "fair, reasonable, and adequate."

*Id.* at 827 (citing *In Re Mid-Atlantic Toyota Antitrust Litig.,* 564 F. Supp. 1379 (D. Md. 1983)); *see also In re Microsoft Corp. Antitrust Litig.* 185 F. Supp. 2d 519 (D. Md. 2002) (applying "the range of possible approval" standard for preliminary approval); *Manual for Complex Litigation (Fourth)* § 21.632 at 320 n. 976 (2004) (endorsing the "range of possible approval" standard for preliminary approval).

### III. THE KEY TERMS OF THE SETTLEMENT

#### A. The Settlement Class (or "Class")

This Court certified the Home Point Class on October 11, 2023. *See* ECF No. 74. Based on a thorough review of loan files and public land records in conjunction with the Parties' settlement discussions, the Parties have jointly agreed to extend, for settlement purposes, the class period to August 8, 2016 to include six loans that both Parties desire to be included in the settlement. The six loans at issue would otherwise fall within the class definition but were slightly outside the end period for the class that the Court previously certified. Accordingly, the Parties believe that including these loans would further the interests of justice by providing relief to these six additional class members. Thus, the Settlement Class is defined as:

4

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C § 2602) originated by, brokered by, and/or otherwise obtained from Home Point Financial Corporation f/k/a Maverick Funding Corporation, for which All Star Title, Inc. provided title or settlement services, as identified on the borrower's HUD-1 or Closing Disclosure, between January 1, 2014, and August 8, 2016. Exempted from this class are: (1) any person who, during the period of January 1, 2014 and August 8, 2016, was an employee, officer, member, and/or agent of Home Point Financial Corporation, Maverick Funding Corporation, or All Star Title, Inc., or any of their subsidiary, parent or affiliate entities; (2) any judicial officer who handles this Lawsuit, and the immediate family members of such judicial officer(s); and/or (3) anyone who has elected to be excluded from the Settlement Class pursuant to the Request for Exclusion procedures as defined below.

Settlement Agreement § 2.12.[2]

### B.     Settlement Benefits

Settlement Class Members were identified by the Parties from Home Point's loan files, data from All Star's loan processing software, and from public land records. The loan files and data include information sufficient to facilitate notice to the Class, including name, last known address, and mailing address of the secured property, and, in most instances, other identifying information such as telephone number and loan number.

The Settlement Agreement divides the Settlement Class into two groups: Group 1 and Group 2. Group 1 is defined as those 222 Class Members whose mortgage loans were originated by the Home Point/Maverick branch at 1820 Lancaster Street, Baltimore, Maryland or the Home Point/Maverick branch at 6833 Clark State Road, Blacklick, Ohio.  Settlement Agreement § 2.10.

---

[2] The Settlement Agreement excludes from the Settlement Class "any judicial officer who handles this case, and the immediate family members of such judicial officer(s)." Settlement Agreement 2.12. While highly unlikely to have any impact, cases have suggested that the judge's staff be excluded from the class. *See Mirkarimi v. Nev. Prop. 1, Ltd. Liab. Co.*, No. 12-CV-2160 BTM (DHB), 2015 U.S. Dist. LEXIS 112680, at *6–7 (S.D. Cal. Aug. 24, 2015).

The transactions and Settlement Class members in Group 1 are specifically identified in Exhibit A[3] to the Settlement Agreement. Group 2 is defined as "those 451 Class Members who are not part of Group 1," and are comprised of all other members of the Settlement Class. Settlement Agreement § 2.11. The transactions and Settlement Class members in Group 2 are specifically identified in Exhibit B[4] to the Settlement Agreement.

The Settlement Agreement establishes a Common Fund plus the amount of Class Counsel's Fees and Expenses and Class Representatives' Service Awards that may be awarded by the Court. Settlement Agreement § 6, 12, 13. Within twenty-one (21) days of the Final Approval Order, Home Point shall remit all Settlement Benefits and Class Representative Service Awards to the Common Fund. Settlement Agreement § 6.1. Both Group 1 and Group 2 Class Members will receive their Settlement Benefits from the Common Fund. To the extent that there is more than one borrower on a Home Point loan subject to this Settlement, the co-borrowers shall be deemed to be one "member" of the applicable group and Settlement Benefits upon Finality shall be paid by check payable jointly to the co-borrowers on such loan. Settlement Agreement § 7.2.

The Settlement Agreement provides for the payment of Settlement Benefits to Group 1 and Group 2 as follows:

---

[3] Plaintiff provides a copy of Exhibit A to the Settlement Agreement with Class members' confidential information redacted. Submitting a redacted copy of Exhibit A to the Settlement Agreement avoids a motion to seal and protects the confidential information of Class members who are not yet parties to the case. Plaintiff can submit an unredacted copy of Exhibit A to the Court if it would be useful for its preliminary approval analysis.

[4] Plaintiff provides a copy of Exhibit B to the Settlement Agreement with Class members' confidential information redacted. Submitting a redacted copy of Exhibit B to the Settlement Agreement avoids a motion to seal and protects the confidential information of Class members who are not yet parties to the case. Plaintiff can submit an unredacted copy of Exhibit B to the Court if it would be useful for its preliminary approval analysis.

1. Each member of Group 1 who does not file a complete and valid Request for Exclusion by the Exclusion Deadline shall be entitled to an amount equal to $1,095.00.

2. Each member of Group 2 who does not file a complete and valid Request for Exclusion by the Exclusion Deadline shall be entitled to an amount equal to $170.00.

Settlement Agreement § 7.1.

    **C.**    **Administration of Settlement Benefits**

The above-described Settlement Benefits will be funded by Home Point into an interest-bearing Common Fund Administered by the Settlement Administrator. Under the proposed Settlement, within twenty-one (21) days after Finality, the Settlement Administrator will issue a check from the Common Fund to each Class Member who did not file a complete and valid Request for Exclusion by the Exclusion Deadline. *Id.*

The total potential Settlement Benefits under the proposed Settlement equal $319,760. Should any Settlement Benefit check remain un-negotiated by the payee(s) after one hundred (100) days, an updated verification for the payee will be undertaken by the Settlement Administrator and a replacement check will be issued and mailed to the updated address of the primary borrower(s). Pursuant to Section 6.2, any amounts remaining in the Common Fund for more than one hundred eighty (180) days after Finality of the Settlement, shall be remitted by the Settlement Administrator to Home Point with any interest earned on the Common fund. This includes any unnegotiated checks.

    **D.**    **The Proposed Settlement Administrator**

7

Under the terms of the Settlement Agreement, the Parties agree that the Settlement Administrator shall be recommended by Class Counsel and that Home Point shall have the right to approve the selection of same. Class Counsel recommended, and Home Point approved, The Casey Group as Settlement Administrator.[5] The Settlement Administrator will be retained and paid, for costs and expenses, by Class Counsel, and Home Point agrees to reimburse Class Counsel for said costs and expenses up to $15,000.00 or such lesser amount(s) as actually incurred.

The Settlement Administrator's duties are defined in Section 10 of the Settlement Agreement and include, *inter alia*, undertaking address verifications for Settlement Class Members and conducting appropriate research to correct incorrect addresses and timely mailing of second notices, sending the Notice pursuant to Section 11 of the Settlement Agreement, accepting and reporting Requests for Exclusion received by the Exclusion Deadline, opening an account for the deposit of the Common Fund, remitting payment from the Common Fund for Settlement Benefits payable to eligible Class Members and Class Representatives, preparing declarations and affidavits necessary to present to the Court with respect to the Settlement Administrator's duties and

---

[5] The Casey Group has been appointed by this Court as the settlement or notice administrator in multiple other similar class action cases. *See, Avery v. J.G. Wentworth Home Lending,* No. 8:19-cv-03303-TJS, Order Granting Preliminary Approval of Class Action Settlement of all Claims, Conditional Certification of Settlement Class, and Appointment of Class Representative and Class Counsel for the Settlement Class, ECF No. 35, Feb. 9, 2021 (appointing the Casey Group as Settlement Administrator); *James v. Acre Mortgage & Financial Inc.,* 1:17-cv-01734-SAG, Order Granting Preliminary Approval of Class Action Settlement of All Claims, ECF No. 85, Feb. 16, 2022 (appointing The Casey Group as Settlement Administrator). The Casey Group has also been approved by this Court as a Class Action Notice Administrator in related litigation. *See Bezek v. First Mariner Bank,* Case No. 1:17-cv-02902-SAG, Order Granting Motion for Approval of Notice Plan and Form of Notice, ECF No. 49, Nov. 17, 2020; *see also, Somerville v. West Town Bank & Trust,* Case No. 8:19-cv-00490-PJM, Order Granting Plaintiffs' Motion for Approval of Amended Class Notice, ECF No. 122, Nov. 23, 2021 (appointing The Casey Group as Notice Administrator).

fulfillment thereof in support of final approval of the Settlement, preparing and issuing applicable tax documents, and other duties as directed by the Parties.

    **E.**    **The Proposed Notice Plan**

Following preliminary approval of the Settlement by this Court, Settlement Class Members must be given notice concerning the nature of the Settlement and their right to object or exclude themselves from the Settlement prior to its final approval. *See* Fed. R. Civ. P. 23(e). In the settlement context, notice shall advise the class members of their rights to exclude themselves from the action, while at the same time affording maximum flexibility for the courts, consistent with due process safeguards. 4 H. Newberg & A. Conte, *Newberg on Class Actions*, § 11:53 (4th ed. 2002); *see also Manual of Complex Litigation* § 30.212 (3d ed. 1995). The proposed Notices, Exhibits C and D to the Settlement Agreement, meet these requirements and have been approved by all Parties.

The proposed Notice Plan for the Settlement is described in Section 11 of the Settlement Agreement and has been designed to provide the best practicable notice of the Settlement, in accordance with Federal Rule of Civil Procedure 23(e), to the Settlement Class through individual mail notices. Notices will be sent by the Settlement Administrator to Class Members by first-class mail to the last known address reflected on the final Settlement Class List. If there is more than one borrower on a subject loan and the co-borrowers have the same last known address, the Notice will be mailed to the co-borrowers' shared last known address. If there is more than one borrower on a subject loan and the co-borrowers have different last known addresses, separate Notices will be mailed to each co-borrower's last known address.

    **F.**    **Class Members' Right to Object to and Opt Out of the Settlement**

Consistent with Federal Rule of Civil Procedure 23, any Class Member shall have the right to object to the Settlement by filing a written Objection with the Court at the address listed in the mailed Notice and by mailing copies thereof to the Parties' counsel. Such objection shall be filed no later than the Deadline established by the Court, which shall not be more than forty-five (45) days after the date the Notice is mailed to the Settlement Class, or as otherwise ordered by the Court.

In addition, any Class Member shall have the right to opt out of the Settlement by sending a written Request for Exclusion to the Settlement Administrator at the address listed in the mailed Notice. Such Requests for Exclusion must be received by the Settlement Administrator no later than the Exclusion Deadline set by the Court, which shall not be more than forty-five (45) days after the date the Notice is mailed to the Settlement Class, or as otherwise ordered by the Court.

### G. The Proposed Release

Under the terms of the Settlement Agreement, Class Members who do not timely exclude themselves from the Settlement, and all of their respective heirs, executors, personal representatives, agents, successors, and assigns (together "the Releasors"), and Class Counsel, shall by virtue of this Settlement and its Final Approval, fully release, remise, resolve, waive, acquit, and forever discharge Home Point, its predecessors, successors, assigns, parents, subsidiaries, affiliates, and all of their respective past, present and future agents, directors, officers, employees, shareholders, insurers, representatives, and attorneys (together "the Releasees") of and from any and all the Released Claims (as defined in Section 16.2 of the Settlement Agreement). Settlement Agreement § 16.1.

The term "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses,

and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, and whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order, that any of the Releasors have, had, and/or may have against any of the Releasees related to: (a) the matters alleged and claims asserted in the Lawsuit and/or matters and claims that could have been alleged therein based in whole or in part on the facts alleged in the complaints filed in the Lawsuit; (b) the origination and origination-related servicing of the loans that are the subject of the Lawsuit; (c) All Star Title's closing of and/or provision of settlement and/or title services on the Home Point loans that are the subject of the Settlement; (d) the referral of business to All Star from Home Point and/or any of its employees, agents, owners, officers or directors and/or any of its predecessors or affiliated entities on the Home Point loans that are the subject of the Settlement  (e) any benefit(s), payment(s), and/or thing(s) of value received by Home Point and/or any of its employees, agents, owners, officers or directors from All Star Title and/or any of its related or affiliated entities on the Home Point loans that are the subject of the Settlement; and (f) any benefit(s), payment(s), and/or thing(s) of value received by All Star Title or any of its related or affiliated entities from Home Point and/or any of its employees, agents, owners, officers or directors on the Home Point loans that are the subject of the Settlement; and (g) any representation or omission concerning the loans that are the subject of the Settlement or the services provided by All Star or any of its employees, agents, owners, officers or directors and or any of its related or affiliated entities  (collectively the "Released Claims"). The Parties shall request that this Release

11

be included in the Final Approval Order and Final Judgment Order entered in these cases. Settlement Agreement § 16.2.

The term "Unknown Claims" means any Released Claims which the Class Representatives or any other Class Member does not know or suspect exists in their favor at the time of the release of such claims which, if known by them, might have affected their decision(s) with respect to this Settlement.

### H.     The Proposed Service Awards and Class Counsel Fees

Section 12 of the Settlement Agreement grants Class Representatives the right to file a motion with the Court, no later than fourteen (14) days before the Final Fairness Hearing, for Service Awards to the Class Representatives not to exceed one thousand five hundred dollars ($1,500.00) per loan. Any Service Awards to Class Representatives shall be paid from the Common Fund and shall be in addition to the Settlement Benefits payable to the Class Representatives.

Additionally, Section 13 of the Settlement Agreement grants Class Counsel the right to petition the Court, no later than fourteen (14) days before the Final Fairness Hearing, for an award of attorneys' fees and expenses in the amount of not more than four hundred fifty thousand dollars ($450,000) for fees and expenses incurred in the prosecution and settlement of the Litigation Claims pursuant to the Local Rules of the Court (a "Petition for Fees and Expenses"). Home Point will not oppose any Petition for Fees and Expenses that seeks not more than four hundred thousand dollars ($450,000). In accordance with Section 13 of the Settlement Agreement, Home Point will wire Class Counsel four hundred fifty thousand dollars ($450,000), or such lesser amount approved by the Court and affirmed on appeal (if any), within twenty-one (21) days of Finality.  The Parties have agreed that Home Point shall not be responsible for any attorneys' fees and expenses in excess of four hundred fifty thousand dollars ($450,000).

## IV. THIS COURT HAS ALREADY CERTIFIED THE HOME POINT CLASS

This Court has already certified the Home Point Class in its October 11, 2023 Order and accompanying Memorandum Opinion. *See* ECF Nos. 73, 74. In conducting its class certification and review, the Court found that the Home Point Class satisfied the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) as follows:

A. The Class is so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). *See* ECF No. 55 ¶ 5.b.

B. There are questions of fact and law common to the Class. Fed. R. Civ. P. 23(a)(2). *See Id.* at ¶ 5.c.

C. The claim of the named Plaintiff is typical of the Class's claims. Fed. R. Civ. P. 23(a)(3). *See Id.* at ¶ 5.d.

D. The named Plaintiff has the same interest as the Class and is an adequate representative. Fed. R. Civ. P. 23(a)(4). *See Id.* at ¶ 5.e.

E. Questions of law or fact common to the Class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). *See Id.* at ¶ 5.g.

F. A class action is a superior method of adjudication. Fed. R. Civ. P. 23(b)(3). *See Id.* at ¶ 5.h.

As the Settlement Class is virtually identical to the class certified by the Court on October 12, 2023, see ECF Nos. 73 and 74, other than extending the end date to provide relief to six additional class members, the Settlement Class also meets all of the requirements of Rule 23 for the same reasons.

## V. THE PROPOSED SETTLEMENT MEETS THE PRELIMINARY APPROVAL STANDARD

The preliminary approval standard focuses on fundamental fairness and the avoidance of collusion:

> To preliminarily approve a settlement in a class action lawsuit, before directing that members of the class be given notice and an opportunity to be heard in a formal fairness hearing, the Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, 2002 U.S. Dist. LEXIS 8234, at *1 (E.D. Pa. 2002) (citing Manual of Complex Litigation § 30.44 (1985)).

*Smith v. Res-Care, Inc.*, No. 3:13-5211, 2015 U.S. Dist. LEXIS 12256, at *3 (S.D. W. Va. Feb. 3, 2015). The Settlement satisfies the preliminary approval requirements of being fair, adequate, and reasonable. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983).

### A.   The Settling Parties' Negotiations Were at Arm's Length and Not Collusive

In approving a settlement, the court must ascertain that it was reached "as a result of good faith bargaining at arm's length." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). To determine if the proposed terms are fair, the court should consider factors tending to show "the presence or absence of collusion among the parties." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. at 1383.

Several factors reflect an informed and vigorous arms-length negotiation, including (i) the settlement negotiations occurring at an advanced stage of the litigation, after the Home Point Class was certified and the Fourth Circuit denied Home Point's petition for an interlocutory appeal; (ii) the substantial investigation and discovery conducted by both parties with respect to the transactions and the alleged RESPA violations that are the subject of the Complaint, and Plaintiffs' counsel's review of analysis of hundreds of thousands of documents related to the allegations in the Complaint, (iii) the substantial concessions made by both parties in coming to a settlement that

permits the widest class recovery balanced by the relative strength of the evidence across loan officers and branches, Plaintiffs' Counsel's review and, (iv) Plaintiffs' and Home Point's Counsels' experience in realistically assessing the benefits of resolving the Litigation by settling, and each counsel's respective experience in having previously resolved class action claims, including those arising out of alleged kickback payments with title companies. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. The circumstances surrounding the settlement reflect an informed and vigorous arm's length negotiation.

**B.     The Settlement is Adequate and Within the Range of Approvable Settlements**

In evaluating the adequacy of a proposed settlement, the trial court should "weigh the likelihood of the plaintiffs' recovery on the merits against the amount offered in settlement." *In re Mid-Atl. Toyota*, 564 F. Supp. at 1384. In so doing, the court should consider:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 316 (D. Md. 1979) (internal citations omitted); *accord Herrera v. Charlotte Sch. of Law*, 818 Fed. Appx. 165, 176–77, n.4 (4th Cir. 2020) (recognizing the Fourth Circuit will continue "to apply its own standards because they 'almost completely overlap with the new Rule 23(e)(2) factors,' rendering the analysis the same") (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474, n.8 (4th Cir. 2020)).

Here, the terms of the Settlement Agreement are fair and reasonable, providing substantial settlement benefits for the Class. Each member of Group 1 will receive $1,095.00. Each member of Group 2 will receive $170.00. These amounts provide real and certain benefits for each Class

Member.  The Settlement Benefits are to be paid under a direct pay model, which courts recognize as a separate and additional benefit to the Class because it reduces administrative costs and removes all obstacles to participating in the Settlement, ensuring the greatest number of Class Members actually participate in the Settlement. *See Palombaro v. Emery Fed. Credit Union*, No. 1:15-cv-792, 2018 U.S. Dist. LEXIS 165970, at *24 (S.D. Ohio Sep. 27, 2018) (granting final approval to settlement of all RESPA claims against defendant lender and concluding "the value of the settlement benefits is high" because "class members will recover approximately $1,160 per loan through a direct pay structure designed to provide settlement benefits as quickly as possible with less administrative costs"); *In re Mid-Atlantic Toyota Antitrust Litig.,* 585 F. Supp. 1553, 1560 (D. Md. 1984) (flat award of $150.00 and $125.00 within the range of adequate awards based on litigation risks and variations in evidence). In evaluating class action settlements of RESPA claims, courts in other Circuits have approved settlements as "fair, adequate and reasonable" that provide settlement benefits similar to those proposed here. *See, e.g., Edwards v. The First American Corporation, et. al*., Case No.  2:07-cv-03796-SJO-FFM (C.D. Cal. June 20, 2016)*,* ECF No. 517, Order Granting Plaintiff's Mot. for Preliminary Approval of Settlement (in RESPA kickback class action finding payment to one group of settlement class members equal to two times title insurance charges, and $75 payment to second group of settlement class members "fair, reasonable and adequate"); *Barbano v. JP Morgan Chase Bank*, N.A., No. EDCV 19-1218 JGB (SPX), 2021 U.S. Dist. LEXIS 75395, at *17 (C.D. Cal. Apr. 16, 2021) ($1000 award to class members provides "meaningful relief" and supports preliminary approval);  *Hoffman v. Wells Fargo & Co.*, No. 08-479, 2013 U.S. Dist. LEXIS 189337, at *11 (E.D. Pa. Feb. 7, 2013)( granting preliminary approval because "gross payment per Class member here is $173, higher than gross payments in settlements recently approved by this Court in similar cases."); *Reed v. Wash. Mut. Inc.,* 2012 U.S. Dist. LEXIS

171606 (E.D. Penn. Dec. 12, 2012 (approving class settlement paying $98 per class member in RESPA case alleging unlawful kickback scheme). Settlement Class Members' settlement benefits will not be reduced by any court awarded attorneys' fees and costs, or by the costs of settlement administration or notice, which Home Point has agreed to pay separately and in addition to the benefits conferred upon the Settlement Class.

The amount recovered is significant when considered against what could be recovered at trial. The recovery per loan under the Settlement Agreement for Group 1 is approximately twice (or 200%) Class Counsel's estimated amount by which the average Class Member was allegedly overcharged for all settlement services on the affected loan. This award, although less than the treble damages provided under RESPA, is many times more than the alleged kickback paid on the average Class Member's transaction as estimated by Class Counsel.[6] The recovery for Group 2 under the Settlement Agreement is approximately equal to Class Counsel's estimated amount by which the average Class Member allegedly overpaid for certain settlement services on the affected loan, which is also likely roughly equivalent to the alleged kickback paid on the average Class Member's transaction as estimated by Class Counsel. The Class loans associated with Group 2 originated from Home Point branches where Class Counsel has uncovered less robust evidence of

---

[6] Courts in this District have approved similar settlement formulas as "fair, reasonable, and adequate" for the purposes of Fed. R. Civ. P. 23(e)(2). *See Ekstrom v. Congressional Bank,* No. 1:20-cv-01501-ELH, ECF Doc. 42 (D. Md. July 28, 2021); *Avery v. J.G. Wentworth Home Lending, LLC*, No. 8:19-cv-03303-TJS, ECF No. 41 (D. Md. June 24, 2021); *Donaldson v. Primary Residential Mortg.*, No. ELH-19-1175, 2021 U.S. Dist. LEXIS 101625 (D. Md. May 28, 2021); *Perzinski v. Competitive Title Agency, Inc., et. al.*, No.: 1:18-CV-01511-TJS, ECF No. 94 (D. Md. June 25, 2020); *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2017 U.S. Dist. LEXIS 126772 (D. Md. Aug. 10, 2017); *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2017 U.S. Dist. LEXIS 87135 (D. Md. June 7, 2017); *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2017 U.S. Dist. LEXIS 3180 (D. Md. Jan. 10, 2017); *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2016 U.S. Dist. LEXIS 160434 (D. Md. Nov. 18, 2016); *Palombaro v. Emery Fed. Credit Union*, No. 1:15-cv-792, 2018 U.S. Dist. LEXIS 165970 (S.D. Ohio Sept. 27, 2018).

an alleged kickback arrangement. While Class Counsel believes those loans were indeed included in the alleged kickback scheme, proving the same at trial would be difficult. As such, Group 2 Class Members would be vulnerable to summary judgement and/or exclusion from the Class.  The broad pattern of loan referrals coupled with potential evidentiary problems, led Plaintiffs to push to obtain a lower amount of recovery for the greatest number of potentially affected transactions under a direct pay structure over a higher recovery with a claims-made structure that would, effectively limit recovery to a small portion of the class members in Group 2.[7]  Further, any Class Member who considers the Settlement Benefit inadequate has the ability to opt out of the settlement by completing and returning a Request for Exclusion form. In addition, Class Representative Yvonne Matthews is in Group 2 and considered and expressly consented to the settlement on behalf of Group 2 Settlement Class members.

Finally, like all complex commercial cases and class actions, this case was not without its associated risks. Although Class Counsel felt confident in its case against Home Point, had this case proceeded, Defendant intended to raise potential obstacles to recovery in future motions, including, but not limited to class members' Article III standing, the issues of statute of limitations, fraudulent concealment, and bases to decertify the class.  While Class Counsel firmly believes this case is strong, Home Point would vigorously defend itself in later stages of the case, thereby confirming that no case is foolproof and all cases contain inherent risks. Settling now avoids real risk to the Settlement Class and provides them with immediate recovery.

Lastly, settling now avoids certain and significant additional fees, costs, and delay. There is no question that continuing to litigate would result in prolonged, costly, and contentious discovery, as well as complex motions and trial practice and appeal to the Fourth Circuit Court of

---

[7] Typically less than 15% of settlement class members obtain recovery in a claims made system.

Appeals. All of which would likely add at least two years to the possibility of relief for the Settlement Class, and possibly much longer. The avoidance of certain delay and costs even further weighs in favor of approval now, especially for a case that has already been pending for four years.

## VI. CONCLUSION

All these factors support preliminary approval of the proposed Settlement. Wherefore, the Settling Parties respectfully request that this Court enter the Proposed Order attached here.

Dated: June 21, 2024

                                                                                                Respectfully submitted,

_____/s/_____  
Timothy F. Maloney, Esq. #03381  
Veronica B. Nannis, Esq. #15679  
Joseph, Greenwald & Laake  
6404 Ivy Lane, Suite 400  
Greenbelt, Maryland 20770  
(301) 220-2200 / (301) 220-1214 (fax)  
Email: tmaloney@jgllaw.com  
Email: vnannis@jgllaw.com  
*Co-Counsel for Plaintiffs*

_____/s/_____  
Michael Paul Smith, Esq. #23685  
Melissa L. English, Esq. #19864  
Smith, Gildea & Schmidt, LLC  
600 Washington Avenue, Suite 200  
Towson, MD 21204  
(410) 821-0070 / (410) 821-0071 (fax)  
Email: mpsmith@sgs-law.com  
Email: menglish@sgs-law.com  
*Counsel for Plaintiffs*

_____/s/_____  
Thomas V. Panoff, Esq. (*pro hac vice*)  
Sheppard Mullin  
321 North Clark Street, 32nd Floor  
Chicago, IL 60654  
(312)499-6328/(312)499-6301  
Email: tpanoff@sheppardmullin.com

Steven P. Hollman, Esq. #09719  
Sheppard Mullin  
2099 Pennsylvania Avenue, NW, Ste.100  
Washington, DC 20006-6801  
(202)747-1941/(202) 747-3912 (fax)  
Email: shollman@sheppardmullin..com  
*Counsel for Defendant*